LAW OFFICE OF CURTIS V. LEFTWICH
California Bar No. 71630
18809 Los Alimos Street
Northridge, CA 91326
Tel:  (818) 324-2091
Email: thedorsal@aol.com

Attorney for Defendant
JONATHAN MATHEW ESTRADA SANCHEZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.  2:15-CR-00634-CAS-3 |
| Plaintiff, ) | [PROPOSED] ORDER SETTING FORTH FACTUAL FINDINGS PURSUANT TO THE CARES ACT |
| JONATHAN MATHEW ESTRADA ) SANCHEZ, ) | |
| Defendant. ) | |

The Court, having read and considered the parties' stipulation regarding request for an order setting forth factual findings regarding the necessity of proceeding by video teleconference in this case, hereby issues the following factual findings:

(1) On March 13, 2020, the President of the United States issued a proclamation declaring a National Emergency in response to the COVID-19 (Coronavirus Disease) pandemic.

(2) The Governor of the State of California declared a Proclamation of a State of Emergency to exist in California on March 4, 2020. Health Officers from Los Angeles, Riverside, Orange, San Bernardino, Santa Barbara, San Luis Obispo, and Ventura Counties subsequently issued local emergency orders and proclamations related to public gatherings.

1   (3) To date, tens of thousands of people within the Central District of

2   California have been confirmed to be infected with COVID-19 and the number of

3   those infected continues to rise, causing an emergency pandemic.

4   (4) In their continuing guidance, the Centers for Disease Control and

5   Prevention and other public health authorities have suggested the public avoid

6   social gatherings in groups of more than 10 people and practice physical distancing

7   (within about six feet) between individuals to potentially slow the spread of

8   COVID-19. The virus is thought to spread mainly from person-to-person contact,

9   and no vaccine currently exists.

10   (5) These social distancing guidelines -- which are essential to combatting

11   the virus -- are generally not compatible with holding in-person court hearings.

12   (6) On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and

13   Economic Security Act ("CARES Act"), which authorized the Judicial Conference

14   of the United States to provide authority to Chief District Judges to permit certain

15   criminal proceedings to be conducted by video or telephonic conference.

16   (7) Under § 15002(b) of the CARES Act, "if the Judicial Conference of the

17   United States finds that emergency conditions due to the national emergency

18   declared by the President under the National Emergencies Act (50 U.S.C. 1601 et

19   seq.) with respect to the Coronavirus Disease 2019 (COVID–19) will materially

20   affect the functioning of either the Federal courts generally or a particular district

21   court of the United States, the chief judge of a district court . . . specifically finds,

22   upon application of the Attorney General or the designee of the Attorney General,

23   or on motion of the judge or justice, that felony pleas under Rule 11 of the Federal

24   Rules of Criminal Procedure and felony sentencings under Rule 32 of the Federal

25   Rules of Criminal Procedure cannot be conducted in person without seriously

26   jeopardizing public health and safety, and the district judge in a particular case

27   finds for specific reasons that the plea or sentencing in that case cannot be further

28   delayed without serious harm to the interests of justice, the plea or sentencing in

1    that case may be conducted by video teleconference, or by telephone

2    conference if video teleconferencing is not reasonably available."

3         (8) On March 29, 2020, the Judicial Conference of the United States made

4    the appropriate findings as required under the CARES Act, finding specifically that

5    "emergency conditions due to the national emergency declared by the President

6    under the National Emergencies Act (50 U.S.C. § 1601, et seq.) with respect to the

7    Coronavirus Disease 2019 (COVID-19) have materially affected and will

8    materially affect the functioning of the federal courts generally."

9         (9) On March 29, 2020, the Chief Judge of this District also made the

10   appropriate findings as required under the CARES Act, finding "that felony pleas

11   under Rule 11 of the Federal Rules of Criminal Procedure and felony sentencings

12   under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in

13   person without seriously jeopardizing public health and safety. As a result, if

14   judges in individual cases find, for specific reasons,

15   that felony pleas or sentencings in those cases cannot be further delayed without

16   serious harm to the interests of justice, judges may, with the consent of the

17   defendant or the juvenile after consultation with counsel, conduct those

18   proceedings by video conference, or by telephonic conference if video

19   conferencing is not reasonably available." These findings will remain in effect

20   through at least September 24, 2020.

21        (10) Through this order, I now find that the sentencing in this case cannot be

22   further delayed without serious harm to the interests of justice. My specific reasons

23   are as follows:

24             a. On March 23, 2020, the Chief Judge of this District activated The

25   Continuity of Operations ("COOP") Plan for the Central District of California.

26             b. Under the COOP Plan, all of the Courthouses of the Central District

27   of California were closed to the public except for hearings on criminal duty

28   matters. Hearings by video and telephonic conference could be held by individual

[PROPOSED] ORDER SETTING FORTH FACTUAL FINDINGS PURSUANT TO THE CARES ACT

1  Judges in certain criminal matters, but Judges had no discretion to hold in-person

2  hearings.  The COOP Plan was in effect through and including June 22, 2020.

3          c. On May 28, 2020, the Court adopted The Plan for Phased

4  Resumption of Operations ("Reopening Plan"). The Reopening Plan has three

5  different phases.

6          d. Phase 1 began on June 1, 2020. During this Phase, certain staff

7  were permitted to return to this District's courthouses to prepare for limited in-

8  court hearings.

9          e. Phase 2 began on June 22, 2020. During this Phase, which remains

10 ongoing, individual Judges have the discretion to hold in-court hearings in any

11 criminal matter. They may also continue to hold hearings by video and telephonic

12 conference. Nevertheless, Judges are not permitted to conduct any jury trials at this

13 time. Judges also remain unable to hold in-person

14 hearings in most civil matters.

15         f. The final phase of the Reopening Plan, Phase 3, will be

16 implemented at a date to be determined. During this Phase, jury trials may resume.

17 As a practical matter, however, this District is unlikely to conduct a substantial

18 number of jury trials –- and reach its former capacity –- until several months after

19 the implementation of Phase 3.

20         g. On April 9, 2020, the Judicial Council of the Ninth Circuit declared

21 a judicial emergency in this District pursuant to 18 U.S.C. § 3174(d). The Judicial

22 Council declared this emergency because, among other reasons, the Central

23 District of California is one of the busiest

24 judicial districts in the country.

25         h. As described in the report accompanying the Judicial Council's

26 declaration, this District currently ranks 3rd in the Ninth Circuit and 12th nationally

27 in weighted filings, with 692 weighted filings per judgeship for the 12-month

28 period ending December 31, 2019. Considering the 10 judicial vacancies, the

**[PROPOSED] ORDER SETTING FORTH FACTUAL FINDINGS PURSUANT TO THE CARES ACT**

adjusted weighted filings per judge is 1,076. Overall, the total civil and criminal filings in the District reached 16,890 in 2019.

        i. Prior to the Judicial Council declaring the judicial emergency, the number of criminal cases filed by the U.S. Attorney's Office had risen substantially over previous totals. The USAO has represented that the number of AUSAs in the Central District is at an alltime

high, and that the USAO will soon have approximately 220 AUSAs to prosecute criminal cases.

        j. This District is authorized 27 permanent judgeships, one temporary judgeship, and has 10 vacancies, the oldest of which has remained unfilled since 2014. All are      categorized as judicial emergencies. There are eight nominees pending, but due to the COVID-19 pandemic the status of confirmation hearing dates remains uncertain. Seven active district judges are eligible to take senior status or retire immediately.

        k. Since 2011, this District has requested anywhere from 8 to 13 additional judgeships. The District has not received any additional permanent or temporary judgeships since 1990.

        l. As the Judicial Conference concluded, the exceptionally large number of cases pending in this District represents an emergency. A vacancy on a district court is generally considered an "emergency" if the court's "weighted filings" exceed 600 per judgeship. The

Central District of California's weighted filings, 692 per judgeship (61 percent above the Conference standard), are high enough for each Judge's caseload to be deemed an emergency.

        m. In normal times, these extreme caseloads can interfere with the prompt resolution of cases and administration of justice in this District. In an October 2019 letter to the White House and Congress, the former Chief Judge of this District warned that "[a]s alarming as this is, the situation may well worsen.

1  Many of the active district judges on the Court who are eligible to retire continue

2  to serve, despite the ever growing workload.  If all of them chose to retire, only

3  eleven active judges would remain, putting at grave risk our Court's ability to serve

4  the millions of people in the Central District."

5          n. The ongoing COVID-19 pandemic will only exacerbate these

6  serious problems. As described in an April 9 Bloomberg article entitled "Short-

7  Benched U.S. Trial Courts Face

8  Post-Pandemic Crisis," districts with high caseloads and a large number of judicial

9  vacancies -- such as this District -- will be challenged to deal with the huge

10  backlog of trials, hearings, sentencings, and other matters once normal operations

11  resume. In an email to Bloomberg commenting on this article, the former Chief

12  Judge of this District agreed that the Central District

13  of California will have a "significant backlog of trials" when normal operations

14  resume. She further expressed that the Judicial Council's recent declaration was

15  "critical for us, given that all ten of our district judge vacancies have been declared

16  judicial emergencies, and that we have an extremely heavy caseload."

17          o. While individual Judges currently have the discretion to hold in-

18  person hearings in criminal matters, social distancing guidelines remain generally

19  incompatible with

20  in-person hearings. Many parties, including defendants, counsel, and court staff,

21  are also unable or unwilling to attend in-person hearings due to legitimate safety

22  concerns. And transporting detained defendants to these hearings may risk the

23  spread of COVID-19 within detention facilities, and result in defendants being

24  subject to quarantines upon their return to these

25  facilities.

26          p. Given these facts, it is essential that Judges in this District resolve

27  as many matters as possible via video teleconference and telephonic hearing. By

28  holding these hearings now, this District will be in a much better position to work

1  through the backlog of criminal and civil matters when normal operations resume.

2       (11) I therefore conclude that the sentencing in this case cannot be further

3  delayed without serious harm to the interests of justice. If the Court were to delay

4  this hearing until it can be held in-person, it would only add to the enormous

5  backlog of criminal and civil matters facing this Court, and every Judge in this

6  District, when normal operations resume.

7       (12) The defendant in this case consents to proceed with her sentencing by

8  video teleconference. Defendant also understands that, under Federal Rules of

9  Criminal Procedure 32 and 43, as well as the Constitution, she may have the right

10  to be physically present at this

11  hearing. Defendant understands that right and voluntarily agrees to waive it and to

12  proceed remotely by video teleconference. Counsel joins in this consent,

13  agreement, and waiver.

14       (13) Based on the findings above, and my authority under § 15002(b) of the

15  CARES Act, the sentencing in this case will be conducted by video teleconference

16  on September 23, 2020, at 12:00 p.m., if at the outset of such hearing, defendant

17  makes a knowing and voluntary waiver of her right to an in-person hearing.

18       IT IS SO ORDERED.

19

20  Date: September 15, 2020

THE HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE